ARPÍN *v.* LÓPEZ ET AL.

APPEAL from the District Court of Humacao.

No. 136.—Decided June 26, 1906.

ANNUITY (CENSO)—RIGHT OF OWNERSHIP—ANNUITANT—CONTRACTS.—The constitution of an annuity (*censo*) in favor of a specified person during his life, and then in favor of the descendants of the founders as patrons, does not create a right of ownership in the property in favor of the annuitant, and as no person can transfer a right which he does not possess, the execution of the contract by an annuitant assigning his ownership, actions, and rights in the encumbered property, is without legal force.

ID.—ACTION TO RECOVER.—Where real property is delivered to a person in order that he may enjoy the same as owner upon the condition of paying the instalments of a certain annuity (*censo*) constituted thereon, failure to comply with the obligation imposed cannot serve as a basis for an action to recover by the person making the delivery of the property or by his assignee.

The facts are stated in the opinion.

*Mr. José Guzmán Benítez* for appellant.

*Mr. Texidor* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

On December 23, 1901, Arthur M. Arpín y Cotte filed a complaint in the District Court of Humacao against Guillermo López Rodríguez, Tulio Larrínaga, and Guillermo Körber, alleging therein the following facts:

"1. That Manuel Suárez Valdés and his wife, Joaquina Díaz, being the owners of an estate situated in Caguas, district of Peñón, or mouth of the Cañas River, having an area of 50 *cuerdas*, sold it by public deed of December 9, 1818, to José Paul, for the price of 1,300 *pesos*, which the vendors left as a rent charge (*censo*) and a tribute upon the estate sold for the founding and endowing of a laical chaplaincy, which they founded and which was to be maintained with the 65 *pesos* annual interest, in favor of Rev. José Manuel Pérez, so long as he should be the parish priest of Caguas, and after he ceased to be such, in favor of the persons occupying said chaplaincy.

"2. That Pedro Puras y Rábano, as the vicar of the parish of Caguas, with the authority of the capitular vicar of the diocese, by deed of February 22, 1899, conveyed and transferred to Arthur M. Arpín the said annuity or tribute, with the interest due and to become due in the future, for the price of 400 *pesos*, próvincial currency, duly paid.

"3. That Arthur M. Arpín sought to recover the interest due up to December 9, 1898, which amounted to 195 *pesos, macuquina* currency, and brought an oral action in the Municipal Court of Caguas against José Paul to this end; and the proceeding having been prosecuted in the default of the defendant, judgment was rendered against him, in the execution of which the said estate was awarded to Arpín in payment, the deed awarding the same to him being executed on May 8, 1899.

"4. That this deed cannot be recorded in the Registry of Property of Caguas, because it appears, according to the decision denying the record, that the estate awarded is recorded in favor of Guillermo López by virtue of possessory proceedings approved by the Court of First Instance of Caguas on January 23, 1899, said decision further setting forth that of the estate in question Guillermo López had already sold 216 *cuerdas*.

"5. That, as a matter of fact, Guillermo López sold a tract having

said area to Tulio Larrínaga for 86.40 *pesos,* according to a public deed executed on December 14, 1898.

"6. That Tulio Larrínaga in turn sold the tract mentioned to Guillermo Körber for the price of 90 *pesos,* according to a public deed executed on February 17, 1899, and recorded, as the previous deed had been, in the Registry of Property of Caguas.

"7. That in the petition in the possessory proceedings Guillermo López alleged that he had acquired the estate by purchase from a number of persons, such as Críspulo and Ramós Ortiz and Plácido Ibarra, under extra-judicial documents; that the estate was unencumbered, and that he had been in possession thereof as owner for more than 10 years, which data was manifestly contrary to the truth, because, according to the parish books of Caguas, the estate had passed on June 25, 1889, to the possession of said López, for administration in the name of the parish, in consideration of the payment to the latter of a specific annual sum on account of the interest on the chaplaincy; which López did, paying such interest according to contract with the parish then represented by Rev. Ramón A. Ibarra."

With these facts as a basis, and citing furthermore in support of his contentions articles 4, 348, 430, 433, 455, and 463 of the former Civil Code, and article 33, subdivision 1 of article 37, subdivisions 2 and 3 of article 79, the third paragraph of article 389, and the fifth subdivision of article 394, all of them of the Mortgage Law, he stated that he established an action for recovery and any rescissory and resolutory actions derived therefrom against third persons. The plaintiff concluded with a prayer that judgment be rendered in his favor and that he be held to have the better right to the ownership of the rural property described; and, consequently, that the possessory proceedings and record of said estate made by Guillermo López Rodríguez in his name, as well as the partial acquisitions recorded in the name of Larrínaga and Körber, successively, be annulled, and the cancellation of the possessory records, in an absolute manner, be ordered, and that the deed of award of May 8, 1899, be recorded in favor of Arthur M. Arpín y Cotte.

Upon answering the complaint Guillermo López Rodríguez and Tulio Larrínaga admitted the allegations of fact

bearing Nos. 1, 2, 3, 4, 5, and 6, but denied the seventh, and added the following:

"1. That Guillermo López acquired the estate in litigation with the consent of the parish priest of Caguas, agreeing to pay to the parish church of that town a certain annual sum.

"2. That such alienation was made owing to the fact that one of the successors of José Paul, in the capacity of owners of the estate subject to the annuity, probably owing to inability to continue paying the interest on the rent charge, which amounts to a great deal more than the real value of the estate encumbered, was obliged to relinquish it in favor of the parish priest of Caguas, in whose person there thus became combined the two different capacities of creditor and debtor of the annuity in question.

"3. That the parish priest of Caguas, not knowing what to do with land of such inferior quality, summoned López and transferred to him the full ownership thereof, provided he would continue to pay the interest on the charge which encumbered it.

"4. That López having become the owner of said land, without any deed of acknowledgment or constitution of the annuity in favor of the parish of Caguas having been executed, upon the suggestion of the priest of said parish, Rev. José León Aguilar, he thought of the institution of possessory proceedings relating to the right of ownership of López, for the purpose of having it recorded in the registry of property; but López, being unwilling to have his estate appear as encumbered by a charge for an amount greater than its value, temporarily abandoned his intention, until Rev. Aguilar having gone one day to his house proposed to him the discontinuance of the payment of the monthly sums agreed on, and that López pay in lieu thereof the sum of 150 *pesos* in the money then current, to which López agreed, paying the sum at his place of residence and receiving a receipt, which he does not possess, as it was lost in the last cyclone which devastated the Island.

"5. That in the proceedings prosecuted by Arthur M. Arpin for the collection of the interest on an annuity which had not been constituted in legal form, and which in any event had disappeared upon the payment of the sum of money stipulated, no attempt was made to ascertain from the registrar who were the present possessors who might be liable for the payment of the sums sought to be recovered; and the estate was awarded to Arpin in the name of the Estate of Paul, whose default had been entered although the right of the latter estate was

not recorded either in the old or in the modern books of the registry, nor was the absence of title in said estate supplied in any form.

"6. That the facts alleged in the petition in the possessory proceedings were not false, because the annuity which encumbered the estate was first extinguished and afterwards redeemed in money with the concurrence of the parish priest of Caguas, José León Aguilar, the prior actual possessors having been the same persons designated in said petition.

"7. That the parish priest of Caguas did not, within the period prescribed in the Mortgage Law in force, apply for the transfer to the modern books of the registry of the encumbrance which has caused this litigation."

In view of the facts stated and the legal provisions which they considered applicable thereto, the defendants, López and Larrínaga, prayed that, taking into consideration the falsity or nullity of the deed of conveyance of the annuity executed by the parish priest of Caguas in favor of the plaintiff and in the inefficiency and nullity of the proceedings prosecuted for the recovery of the sums alleged to be owed by the Estate of José Paul, the complaint be dismissed and that the existence and validity of the records made in the registry of property in favor of said defendants be recognized, and that the record of the action brought, or the marginal note of nullity be ordered cancelled, with the costs against the plaintiff, or such decision as to each of the defendants as might be proper on this point.

Guillermo Körber also entered an appearance in the action, but did not make any allegation whatsoever upon the main issue involved, holding that he was not interested in the litigation inasmuch as he had already conveyed to Tulio Larrínaga the ownership of the tract of land which the latter had sold him, to which Larrínaga agreed.

Aside from the evidence relating to the facts accepted by the parties in their complaint and answer, the following evidence has been submitted:

1. A copy of the public deed endowing the chaplaincy, exe-

cuted on January 31, 1817, by Manuel Suárez Valdés and his wife, Joaquina Díaz, both of whom set forth therein that:

"Inasmuch as the Rev. José Jiménez, the former rector of the Holy Parish Church of Caguas, by the will executed in said town on November 6, 1799, before the military mayor (*Teniente á Guerra*) Rafael Delgado, had disposed in clause 23 thereof that Joaquina Díaz should order masses, to the value of 100 *pesos*, to be paid for him every year, the spouses had decided to found for the benefit of the soul of said Jiménez a laical chaplaincy under the protection of the Royal Patronage of Lay Foundations, and to carry out their intention they then and there founded and instituted forever in the parish church of Caguas and the altar of Our Lord of Good Health, the said chaplaincy, for memorial masses, under the protection of the Royal Patronage of Lay Foundations, upon the estate or tract situated at the mouth of the Cañas River, which they had sold to José Paul for the price and sum of 1,300 *pesos*, according to deed of December 9, 1816; providing that the calls to this chaplaincy and the enjoyment of the income therefrom should be to Rev. José Manuel Pérez, the parish priest of Caguas, for such time as he might continue as such, and upon his ceasing to act in that capacity, to the legitimate children and descendants of the endowers, preference being given to the senior in age over the younger, and the male over the female, the line of the last holder to all the others, and the female of the nearer line and degree to the male of a more remote degree, with full power in order that with the mere title of the patrons they be considered as actual chaplains without further possession or any other acts or documents, and as such that they receive, hold, and enjoy the interest on said estate; so that the chaplains appointed shall be under the obligation, personally or through some poor priest, of saying mass at said altar of Our Lord of Good Health 53 times every year on the days which they might see fit; and as it may occur that there may be no priest in the district to say mass when the parish priest is not there, but in such case only the masses may be said at any other altar of Our Lord of Good Health; and that no ecclesiastical judge shall present this chaplaincy, which is not to be changed into a collative one even though the patrons and the chaplain should so desire; that it shall be included among the memorial masses of the parish in order that the ordinary ecclesiastic upon visiting it may know whether the chaplain complies with his duties or not; the endowers constituting themselves patrons of this chaplaincy during their lifetime and afterwards their legitimate children and descendants:

and upon the disappearance of all, the *juez mayor* of the judicial district shall in such case appoint as chaplain the poorest and most virtuous priest in the district or neighborhood."

2. A certificate issued by Pedro Puras, the parish priest and vicar of the parish of Caguas, with relation to books 1 and 2 of chaplaincies on file under his charge, from which certificate it appears that Guillermo López paid various sums as interest on the chaplaincy in question from June 25, 1889, to June 30, 1895, and it should be noted that the following entries appear in said books:

"This chaplaincy forms part of the pious legacy of Rev. José Jiménez, which was transferred to the *barrio* of Quebrada Puercos of this jurisdiction and has been held for years by Francisco Baiz, who paid the interest thereon. It has this day been delivered to Guillermo López, who paid 20 *pesos* on account, June 25, 1889.—Reverend Ibarra."

"In view of the fact that the estate upon which this annuity is a charge is not cleared and was received without cultivation whatsoever, the annuity has been reduced to 35 *pesos*, and he paid for the year which expires in June, 1892.—Reverend Ibarra."

"The interest of 35 *pesos* was paid by Guillermo López, to whom the vicar of this parish since the time of Rev. Ramón A. Ibarra had agreed to deliver 57 *cuerdas* of land in the district of Peñón, the said López agreeing to pay only the annual sum above mentioned. This interest pertains to the year ending to-day. Caguas, June 30, 1895.— Rev. José León Aguilar."

3. A letter dated May 27, 1895, signed by Rev. José León Aguilar and addressed to Guillermo López, reading as follows:

"Caguas, May 27, 1895. Mr. Guillermo López. Dear Sir: As you offered to come in the month of March last to arrange the matter of the chaplaincy, I find it strange that you have not kept your word, and as his right reverence, the Bishop, will soon arrive in this vicarage, I am compelled to inform you that if within three days after the receipt of this letter you do not come to arrange the matter, I shall be compelled to treat you without further consideration and proceed against you through judicial channels because the Bishop will hold me responsible if, being unable to obtain anything in a friendly manner, I

do not proceed as he has directed me to do. I must likewise inform you that if you do not appear to institute the possessory proceedings, then I shall proceed to do so in favor of this parish. Hoping that you will not compel me to take the action indicated, I remain your obedient servant and chaplain, who kisses your hand.—Rev. José León Aguilar.''

4. The testimony of witnesses Hilario Méndez, Eusebio Hernández, Quintín Viera and Justino Valdés, the first of whom testified that he was present at an interview in 1895 between Father Aguilar and Guillermo López in the latter's store, and that Father Aguilar told López that he was going to buy a chaplaincy in Peñón for him, López having brought a paper upon which the receipt was written; the second, that when he was in the store of López one day, about the middle of the year of the cyclone, he saw Father Aguilar in front of the counter and López counting money, Aguilar having subsequently asked López for a piece of paper on which he wrote; the third, that one day, the date of which he does not recollect, about the middle of 1895, he entered the store of López and saw him counting money out to a priest, who asked for pen and paper and wrote a document, although witness did not know either the transaction or the amount, and that the cyclone destroyed the house of López; and the fourth, that one day, about the middle of 1895 and while he was in the store of López, Father Aguilar arrived and stated that he was going to receive the money for the chaplaincy; and, going inside, he took out paper and ink and wrote a receipt; that he does not remember the date of the transaction, and that the cyclone destroyed the house of López.

5. A number of receipts for taxes paid by Guillermo López, without specifying the property, from 1894 to 1902.

The Humacao court rendered judgment on October 8, 1910, the conclusions of law and adjudging portion of which read as follows:

''First. The right alleged by Arthur M. Arpín y Cotte is based on the deed No. 77 executed before Notary Lorenzo Jiménez García on

February 22, 1899, involving the assignment of the ownership, rights and interests which the parish of Caguas has or may have under an annuity valued at 1,300 *pesos* upon two estates, paying an interest of 5 per cent per annum, with which, according to the deed executed in Caguas on January 31, 1817, by Manuel Valdés and his wife, Joaquina Díaz, a laical chaplaincy was founded.

"Second. This instrument of endowment did not establish any right whatsoever in favor of the parish of Caguas, but only in favor of Manuel Pérez as long as he should remain the parish priest of the judicial district, and then in favor of the children and descendants of the founders in order that under the title of patrons they should be considered as executors of the chaplaincy and as such receive and enjoy the interest on said estate.

"Third. What has been stated shows that the alleged assignment of ownership, rights, and interests embodied in said deed No. 77 does not contain the second requisite of article 1261 of the Civil Code of 1899 to constitute a contract, because the certain object of the assignment; that is to say, the ownership, rights, and interests sought to be conveyed does not exist; and, consequently, all acts which have their origin in said alleged conveyance have no legal force, as is the case with the sale made under No. 157 in the city of Caguas on May 8, 1899, before Notary Abelardo Cajas y Machado by the municipal judge of said city in favor of Arturo Arpín y Cotte.

"Fourth. Taking the evidence submitted by the parties as a whole, it has not been proved that Pedro Puras y Rábano, the assignor, had any right in the thing in the capacity of priest and vicar of the parish of Caguas, nor in any other capacity; for which reason he could not convey a thing he did not have, because it is an incontrovertible principle that no one can transfer to another rights which he does not have.

"In view of the articles cited, articles 1214, 446, 448 of said Civil Code, and articles 371 of the Law of Civil Procedure and 59 of General Order No. 118, Series of 1899, we adjudge that we should and we do dismiss, the complaint filed by Arturo M. Arpín y Cotte against Guillermo López Rodríguez, Tulio Larrínaga y Torres and Guillermo Körber y Garké, render judgment in favor of them, and order that the record of the action in the registry of property be cancelled, with the taxation of all the costs in these proceedings against the plaintiff. Thus, by this our final judgment, do we pronounce, order and sign.— Salvador Fulladosa; Ramón Quiñones; Charles E. Foote."

Counsel for the plaintiff took an appeal from this judgment, which, having been duly prosecuted, is now awaiting the decision of this Supreme Court, after counsel for the appellants and counsel for Guillermo López and Tulio Larrínaga had presented their respective arguments, both orally and by brief.

We agree with the conclusions of law transcribed, which serve as a basis for the judgment appealed from, and we cannot enter upon a discussion of the nullity of the deed of endowment of the lay chaplaincy executed on January 31, 1817, by Manuel Suárez Valdés and his wife, Joaquina Díaz; for the reason that such nullity was not the subject of discussion at the trial in the lower court.

But in addition to this, from the evidence presented at the trial it appears that the parish of Caguas delivered to Guillermo López the estate in question under the condition that he pay the interest annually on the annuity agreed upon to which it was said to be subject; and although the ground upon which such delivery was made is not given, it appears that on May 27, 1895, the vicar of Caguas admonished Guillermo López that if he did not file the possessory petition within three days he would proceed to do so in favor of the parish. This letter shows that the vicar of Caguas delivered the estate to López to hold as owner under the obligation of paying the interest agreed upon, as López alleged in his answer to this complaint, an obligation the nonperformance of which would never give rise to an action for recovery on the part of the parish of Caguas, of which Arpín is the assignee, although there are some indications in the testimony of the witnesses that López relieved himself of this obligation by an agreement made with the vicar of Caguas. Arthur M. Arpín cannot deny the acts performed by the parish of Caguas from which he derives the right which gave rise to the award of the estate by public deed of May 8, 1899, and, therefore, he cannot exercise an action for recovery against López, to whom his assignor had transferred the ownership of said

estate; and if the exercise of the action for recovery cannot succeed, neither can the rescissory and resolutory actions against third persons to which the plaintiff makes reference.

For the reasons stated, the judgment appealed from should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Justices Figueras, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.